## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ralph Butler                             :
*assignee of* Shalanna Banks,            :
                                         :
         Plaintiff,     :
                                         :       CIVIL ACTION NO.
     v.                 :       1:07-CV-3104-JOF
                                         :
First Acceptance Insurance Company,      :
Inc.,                                    :
                                         :
         Defendant.     :

## OPINION AND ORDER

This matter is before the court on Defendant's motion to compel production of video

recordings [46]; Plaintiff's motion for partial summary judgment [48]; Defendant's motion

for summary judgment [58]; Defendant's motion to exclude expert testimony of Frank E.

Jenkins III [76]; and Defendant's motion to exclude expert testimony of James Puckett [77].

## I.    Background

### A.    Procedural History and Facts

On November 12, 2007, Plaintiff, Ralph Butler, as assignee of Shalanna Banks, filed

suit against Defendant, First Acceptance Insurance Company, in the State Court of Fulton

County, alleging a cause of action of tortious failure to settle claim. Defendant removed the

suit to this court on December 14, 2007.

On January 20, 2006, Ralph Butler was loading garbage into the back of a stopped garbage truck in Barnesville, Georgia. Shalanna Banks was driving in her vehicle and approaching the garbage truck from the rear. She drove into the back of the garbage truck and pinned Butler's legs between the front of her car and the garbage truck. Butler was life-flighted to Grady Hospital where his right leg was immediately amputated. Two months later, after complications, Butler's left leg was also amputated.

At the time of the accident, Banks was insured by Defendant with a bodily injury coverage limit of $25,000. On January 24, 2006, Chad Simmons, an adjuster for Defendant, was assigned Butler's claim against Banks. On February 2, 2006, Simmons obtained an accident report describing the crash and noting that Butler was life-flighted from the scene. On February 10, 2006, Brian Rogers sent Defendant a letter stating that he represented Butler and requesting information on the limits of coverage. As of March 6, 2006, Simmons had determined that Banks was at fault and that Butler's injuries exceeded the policy limits of the coverage. On April 10, 2006, Butler's claim was transferred to Chris Bowker, a bodily injury adjuster. As of that date, Defendant had no information about liens. On April 27, 2006, Bowker sent Rogers a copy of the declarations page of Banks' insurance policy and requested that Rogers send him information about Butler's medical situation.

On June 27, 2006, Rogers called Bowker to ask whether Banks was working in the scope of her employment during the accident. During that conversation, Rogers gave

2

Bowker his telephone number, but did not mention to Bowker that he was sending a demand letter that day. Rogers sent Bowker a certified letter making a demand for the coverage limits. The letter stated:

> In response to your April 27, 2006 correspondence requesting various information, we have received some of the requested documents and will forward others when received. What medical records we have, [sic] are attached. We are in the process of getting others and will updates [sic] as appropriate.
>
> . . .
>
> Regardless of the lack of responsive documents to your request, the enclosed medical records are more than sufficient evidence that this clear liability case is worth considerably more than the available coverage. We hereby make demand for the tender of the available coverage in exchange for a Limited Release. This demand will remain open until **9:00 a.m., July 7, 2006,** at which time it will be deemed refused.
>
> As you know, an insurer may be held liable to the insured for negligently failing to settle the claim within policy limits, where it has an opportunity to do so. See <u>Smoot v. State Farm Mutual Automobile Insurance Company</u>, 229 Fd 2d 535 (5th Cir) (1962) [sic] and 381 Fd 2d 331 (5th Cir) (1967) [sic], <u>Southern General Insurance Company v. Holt</u>, 262 Ga. 267 (1992).

*See* Letter from Brian Rogers to Chris Bowker, dated June 27, 2006, at 1-2. The letter did not contain Butler's medical bills or payment information, nor did it have any information on lost wages. It did contain some operative reports from Grady Hospital. Although Rogers knew at the time he wrote this letter that Butler's workers' compensation was paying Butler's medical bills, he did not convey this information to Bowker or any representative of Defendant. AIG, the workers' compensation carrier, wrote several letters to Rogers

3

stating that AIG had a lien for money paid on behalf of Butler. As of June 27, 2006, AIG's most recent lien calculation was $163,275.09. The demand letter sent by Rogers also did not contain any proposed release.

Defendant received this letter on June 29, 2006. Due to the intervening Fourth of July holiday, Defendant had less than five full business days to respond to the time-limited demand. Bowker made an entry in his log to evaluate the demand on July 5, 2006. On July 5, 2006, Bowker determined that Butler's injuries exceeded the policy limits of coverage. Bowker filled out a form requesting policy limits authority from Richard Cantrell, a senior manager. Cantrell gave Bowker the authority, but told him to protect the insured against any workers' compensation or hospital liens. Bowker had some recollection of a hospital lien, but did not have any conversations with Butler's workers' compensation carrier or his employer. Because of the potential for liens, Cantrell told Bowker to talk about the authorization with litigation manager Doug Carr. Carr told Bowker to call Defendant's local counsel, Robert Tidwell, for advice.

Bowker testified that Tidwell told him the hospital lien affidavit would protect them against hospital liens. Tidwell also told Bowker that an injured party could not release a workers' compensation lien. (Tidwell testified that he could not specifically recall the conversation). Bowker knew he would need to get a direct agreement with the workers' compensation carrier. Bowker did not make any additional calls after talking with Tidwell.

4

He reported the conversation to Carr who told him to fax the policy limits offer to Rogers "contingent upon protection of any and all hospital liens and waiver of subrogation from the worker's compensation carrier." Carr and Bowker both testified that they expected to settle the case for the policy limits. Bowker believed that Rogers would take care of the subrogation issue with the workers' compensation carrier.

Bowker responded to the demand letter on July 5, 2006, stating:

We have received your office's demand of June 27, 2006. At this time, we're prepared to offer $25,000.00 in full and final settlement of your client's case.

This offer is for our complete policy limit of $25,000.00 per person.

This settlement offer is contingent upon protection of any and all hospital liens, and a waiver of subrogation from Mr. Butler's employer's workers' compensation carrier in this case.

We look forward to hearing from you in this regard.

*See* Fax from Chris Bowker to Brian Rogers, dated July 5, 2006, at 1.

Rogers did not respond to this correspondence until two hours after the July 7, 2006, deadline had passed. At that time, Rogers sent Bowker a letter stating "Thank you for your response to our limits demand. Please be advised that we consider your condition regarding the offer being 'contingent upon protection of any and all hospital liens, and a waiver of subrogation from Mr. Butler's employer's workers' compensation carrier in this case' to be a counter offer and, therefore, a denial of our demand." *See* Letter from Brian Rogers to Chris Bowker, dated July 9, 2006, at 1.

In his deposition, Rogers testified about his decision-making at this point.

> Q:    Is it fair to say that the only reason you didn't call Mr. Bowker to discuss his letter of July 5th is that you concluded it was a counter-offer to your proposal, and you really didn't have to respond to it?

> A:    I would say that's fair; or maybe I didn't have to, because there was no need to.

Rogers Depo., at 139-40.  At this point, Rogers was not aware of any other potential insurance coverage for his client.

> Q:    And if that were true, then the Negligent Failure to Settle Claim is really the only shot you've got in getting Mr. Butler full compensation for his injuries?

> A:    That's correct.

*Id.* at 140.  Rogers stated that Bowker "had failed to tender [policy limits] in an appropriate manner, there now is at least a viable cause of action for Negligent Failure to Settle." *Id.* at 129.  Rogers further testified:

> Q:    It is fair to say that there was really . . . no detriment to Ralph Butler to take the $25,000 offer after July 7th if he could have gotten a return for Limited Release and only indemnification for Workers' Comp and for hospital liens, the only thing he would have given up at that point would be the potential of getting Ms. Banks' potential Bad Faith or Negligent Failure to Settle Claim?

> A:    Well, I think that the question is saying that there is no detriment except for the potential dot, dot, dot. . . . So, I would say there is detriment, because of the potential. . . . The forfeiture of the potential is a detriment to him.

6

*Id.* at 131. Rogers testified that he would have been willing to provide indemnification for these matters in any agreement that the parties could reach.

On July 13, 2006, Butler filed a personal injury suit against Banks in Lamar County Superior Court. Several weeks later, on August 1, 2006, First Acceptance offered the $25,000 unconditionally to Plaintiff. First Acceptance stated in that letter that it had completed its check of liens that its insured could potentially be obligated to satisfy. Plaintiff did not accept the $25,000 offer and the personal injury case eventually resolved with a consent judgment against Banks for $3.25 million. Banks then assigned her rights against Defendant to Butler. On November 12, 2007, Butler, as Banks' assignee, filed the instant suit against Defendant for negligently failing to settle Butler's claims.

### B.    Expert Testimony

Plaintiff has proffered the testimony of two experts, Frank E. Jenkins, III, an attorney with experience handling insurance aspects of personal injury claims, and James Puckett, a retired claims adjustor with 34 years of experience at State Farm. Defendant has filed *Daubert* motions to exclude the testimony of both Mr. Jenkins and Mr. Puckett.

Mr. Jenkins offers the following opinions: (1) First Acceptance was required to complete its evaluation of the risk to its insured and to respond to the time-limited demand in a timely manner; (2) First Acceptance was under a duty to protect its insured by paying its policy limits in accordance with the demand; (3) Mr. Butler's demand for a limited

7

release was entirely reasonable under the circumstances of this case; (4) First Acceptance's response to Mr. Butler's demand was a counter-offer that constituted a rejection of the terms of Mr. Butler's demand for settlement and Mr. Butler was under no duty to continue negotiating with First Acceptance; (5) First Acceptance should have known the effect of a limited release, as it is commonly used in Georgia; (6) First Acceptance's refusal of the demand was a failure to exercise the standard of care required of First Acceptance to give the proper consideration to its insured's interest in this case; (7) the failure to investigate the existence of a medical lien was a failure to exercise the standard of care required of First Acceptance to give the proper consideration to its insured's interest in this case; (8) First Acceptance also failed in protecting its insured's interest because it did not determine the legal effect of the workers' compensation payments on behalf of Mr. Butler in conjunction with the "made whole" doctrine in Georgia; and (9) First Acceptance did not protect its insured's interest because it failed to notify her of the time-limited demand until after the time for response had elapsed.

Mr. Puckett offers the following opinions: (1) the insurance company has a duty to investigate any claims once an accident is reported; (2) this duty to investigate may also include contacting counsel for the claimant to discuss the case, contacting outside legal counsel for advice, checking for the existence of hospital liens or outstanding hospital bills, determining the status of worker's compensation liens, and other similar tasks; (3) Bowker

and his supervisors failed to follow industry standards and practices by failing to proactively investigate Ralph Butler's claim; (4) the insurance company also has a duty to protect the interest of its insured in order to avoid a judgment that is in excess of the insured's policy limits; (5) Bowker and his supervisors deviated from insurance industry standards and practices by failing to proactively tender the policy limits after learning of the catastrophic nature of Butler's injuries; (6) Bowker and his supervisors deviated from insurance industry standards and practices in failing to investigate any possible hospital lien or worker's compensation lien; and (7) Bowker and his supervisors also failed to protect the interests of its insured by making a counteroffer to the demand which exposed the insured to the risk of excess judgment.

### C.    Contentions

With respect to its *Daubert* motions, Defendant argues that Mr. Jenkins' testimony should be excluded because he is a personal injury lawyer who has never worked in the automobile insurance industry. Defendant also notes that Mr. Jenkins has never litigated a tortious failure to settle case. Finally, Defendant asserts that Mr. Jenkins' expert report contains his own statements of Georgia law and other legal conclusions and is therefore inappropriate. Plaintiff responds that Mr. Jenkins has handled personal injury suits involving insurance carriers for over thirty years, working with insurance companies to defend insureds against personal injury claims. He also is the co-author of *Georgia*

*Automobile Insurance Law, Including Tort Law*, which has been referred to in several Georgia court opinions. He also served as an expert in a Georgia state case involving tortious failure to settle.

Defendant contends that Mr. Puckett's testimony should be excluded because the writing of his expert report was a collaboration between him and Plaintiff's counsel, and Plaintiff failed to retain any drafts of the report such that it would not be possible for Defendant to cross-examine Mr. Puckett to determine which portions of the expert report he actually wrote and which portions Plaintiff's counsel wrote. Defendant further argues that Mr. Puckett's testimony does not reflect the legal standard in Georgia of giving "equal consideration" to the insured, but rather reflects what Mr. Puckett believes to be "the best way" to handle claims. Finally, Defendant avers that because Mr. Puckett only worked for one insurance company in his entire career and never participated in developing claims procedures, he has no understanding of the "industry standard" but rather can only opine on the way State Farm conducted its business.

Plaintiff responds that Mr. Puckett has 34 years of claims handling experience working with individuals who had both minimum limits and higher limits policies. Mr. Puckett also handled thousands of time-limit policy limit demands while working as a claims adjuster. Plaintiff avers that Mr. Puckett had interaction with representatives from other carriers, including nonstandard carriers, during his career and that both have the same

standards of care. Plaintiff also responds that because Mr. Puckett had never prepared an expert report for federal court, he provided an oral report of his opinions to Plaintiff's counsel and that report was typed by an employee in Plaintiff's counsel's office. Mr. Puckett reviewed the draft, made changes, and once Mr. Puckett was certain he agreed with the opinions in the report, he signed it.

On the merits, Plaintiff contends that Defendant was negligent in the manner in which it dealt with Plaintiff's time-limit demand because its response to Plaintiff's demand letter was not an acceptance, but rather a counter-offer because of the contingencies placed by Defendant. In his motion for partial summary judgment, Plaintiff asks the court to rule that the letter was a counter-offer and not an acceptance and therefore, Defendant's defenses of waiver, release, estoppel, accord and satisfaction fail. Defendant also asks the court to rule that there is no evidence that Plaintiff "set up" Defendant into failing to settle the case. Finally, Plaintiff avers that it is a jury question whether Defendant's actions in response to Butler's demand letter were reasonable.

In its own motion for summary judgment, Defendant argues that First Acceptance timely responded to Mr. Butler's demand letter offering the full policy limits and that First Acceptance's request for certain protections in the language of final settlement documents to protect its insured did not act as a counter-offer. Defendant avers, therefore, that it gave "equal" or the "same faithful" consideration to its insured's financial interest as its own, as

required under Georgia law. Because it agreed to pay out its full policy limits, Defendant argues it cannot be liable for a tortious failure to settle claim. Defendant contends that Plaintiff's attempts to apply common law negligence theories are in conflict with the standards established by Georgia law for tortious failure to settle. Finally, Defendant avers that Plaintiff's counsel "set up" Defendant for the tort claim by failing to respond to Defendant's letter concerning contingencies and instead waiting until two hours after the deadline of the time-limit demand had passed to inform Defendant that Plaintiff believed Defendant had rejected her offer.

## II.    Discussion

### A.    *Daubert* Motions

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The United States Supreme Court has interpreted this statement to require district courts to become evidentiary gatekeepers, "ensuring that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

The Supreme Court recognized that the rule admits only "scientific knowledge" and not speculation or subjective belief. Scientific knowledge derives only from the actual

application of scientific methodology. The Supreme Court has subsequently made clear that *Daubert*'s gate-keeping function applies not just to scientific but also to technical or other specialized knowledge. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

In order to be considered reliable, proposed expert testimony must be supported on "good grounds." *Id.* at 590. The Supreme Court has provided four non-exhaustive factors to aid the trial court in determining reliability: (1) Testability of the theory or technique; (2) whether or not there is a known or potential rate of error; (3) whether the theory or technique has been subjected to peer review; and (4) whether the theory has received general acceptance in the relevant community. *Id.* at 593-94. Ultimately, however, the reliability inquiry must be tied to the particular facts of the case. *Kuhmo Tire*, 526 U.S. at 150 (internal citations omitted).

Equally important to the gate-keeping function is a determination of whether the proposed testimony is relevant. *Daubert*, 509 U.S. at 591. Relevant testimony is that testimony that "logically advances a material aspect" of a party's case. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). In other words, an expert's testimony should help the trier of fact decide the case at bar. In sum, an expert's testimony may only be admitted into evidence if (1) the expert is qualified to testify competently about the matters he is to discuss; (2) the methodology supporting his conclusions is sufficiently reliable; and (3) the expert testimony is relevant and helps the trier of fact to understand the

13

evidence or determine a fact in issue. *Id.* at 1309. *See also McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004).

Of particular relevance to an expert proffered for his experience, the court notes that neither *Daubert* nor its progeny preclude experience-based testimony, *see Kuhmo Tire*, 526 U.S. at 151, nor do they prohibit trained experts from forming conclusions by extrapolating from existing data. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert's opinion testimony becomes inadmissible, however, where it is connected to existing data only by the ipse dixit of the expert. *Joiner*, 522 U.S. at 146.

When a witness relies "solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis added). An expert's qualification and experience alone are not sufficient to render his opinions reliable. *Id.* The testimony must also assist the trier of fact. *Id.* at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.

Here, Defendant argues that Mr. Jenkins is not qualified to provide expert testimony on the standard of care for a claims adjuster receiving a time limited demand letter. Mr.

AO 72A
(Rev.8/82)

Jenkins is an attorney who has represented parties in personal injury and insurance litigation for over 30 years. He is co-author of *Georgia Automobile Insurance Law, Including Tort Law*. Mr. Jenkins was retained as an expert in a Georgia state court case involving a tortious failure to settle claim. The court notes, however, that Mr. Jenkins has never worked in the insurance industry, nor has he litigated a tortious failure to settle case. While an expert may be qualified based on "knowledge, skill, experience, training, or education," the court finds that Mr. Jenkins' extensive background is not relevant to the legal issues here. Mr. Jenkins' experience relates to personal injury and insurance claims in general. Mr. Jenkins admitted that he never litigated a tortious failure to settle claim and therefore his background does not match the subject matter of this suit. Further, because Mr. Jenkins lacks the qualifications necessary to opine in a tortious failure to settle case, Plaintiff cannot explain how Mr. Jenkins' experiences lead to the opinions he has offered in this case. Nor can Plaintiff show that Mr. Jenkins' testimony would offer the jury any more than what Plaintiff's counsel could argue in closing arguments. Finally, the court notes that the great bulk of Mr. Jenkins' proposed testimony sets forth legal standards for insurers under Georgia law. The jury, however, is not to receive its instructions of law from a party's expert, rather it receives them from the judge. For these reasons, the court concludes that Mr. Jenkins is not qualified to offer his opinion in this case because his area of experience is not relevant for the issues in the litigation and will not aid the trier of fact.

Similarly, the court finds that Mr. Puckett also is not qualified to offer an opinion in this matter. Mr. Puckett purports to offer an opinion on the "industry standards" with respect to time-limit demand letters in the insurance context. However, Mr. Puckett has only worked for State Farm insurance company in his thirty-plus years working as a claims adjuster. While Mr. Puckett has handled thousands of time-limit demand letters, his experience with a single insurance company cannot translate into knowledge of the industry standards. Mr. Puckett has never reviewed the claims policies and procedures of any other insurance company, nor has he made any presentations outside of State Farm. He has never reviewed the claims file from another insurance company. Plaintiff attempts to bolster Mr. Puckett's credentials by arguing that he also attended monthly luncheons of the Atlanta Claims Association and had conversations with other claims adjusters in connection with handling State Farm claims. The court finds that these luncheons – which covered all aspects of the claims process and did not focus on tortious failure to settle issues – are not sufficient to qualify Mr. Puckett to opine on industry standards. Further, Mr. Puckett has not belonged to that organization for over fifteen years. Plaintiff has not put forward any evidence from Mr. Puckett or otherwise to show that the manner in which State Farm conducted its business constituted an industry-wide standard.

While the law does not require that an expert point to any particular treatise or policy to bolster his opinions, the expert must be able to explain how his background and

experience allow him to offer an opinion as to the matter at hand. Here, Mr. Puckett has not shown how his years working only for State Farm would give him the background and experience to opine on matters of the broader insurance industry. To find Mr. Puckett's testimony reliable, the court would have to "take a leap of faith" and rely on Mr. Puckett's "*ipse dixit* and assurance that his testimony is based on nationally accepted standards." *See Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006) (Forrester, J.) (noting that Eleventh Circuit has "warned against" reliance on "naked assurances of the purported expert") and *id.* at 1316 (excluding expert because his knowledge as to growth rates of particular yeast came from "chit-chat" with other mycologists and not from personal experience).

For the foregoing reasons, the court GRANTS Defendant's motion to exclude expert testimony of Frank E. Jenkins III [76]; and GRANTS Defendant's motion to exclude expert testimony of James Puckett [77].[1]

### B.      Tortious Failure to Settle Claim

In *Delaney v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536 (11th Cir. 1991), a physician's estate filed suit against his malpractice liability insurer for negligent or bad faith

---

[1]Because the court grants Defendant's *Daubert* motions, the court need not consider Defendant's motion to compel the production of videotaped presentations by both of Plaintiff's experts which were produced in preparation for the mediation entered into by the parties in a previous attempt to settle the case. The court, therefore, DENIES AS MOOT Defendant's motion to compel [46].

AO 72A
(Rev.8/82)

failure to settle a suit against the physician. The Eleventh Circuit found that "Georgia law is ambiguous . . . as to whether an insured may recover for the insurer's negligent, as well as bad faith, failure to settle. Some Georgia cases imply that only bad faith is actionable. . . . Other cases are ambiguous on the issue or blend the negligence and bad faith standards. . . . Still other Georgia cases explicitly recognize a claim for negligent failure to settle." *Id.* at 1547-48 (citing numerous cases).

The court's own research indicates that the earliest mention of such a tort might be *Francis v. Newton*, 75 Ga. App. 341 (1947), where the court stated it would be possible to hold an insurance company liable for damages to its insured for "failing to adjust or compromise a claim covered by its policy of insurance, where the insurer is guilty of negligence or of fraud or bad faith in failing to adjust or compromise the claim to the injury of the insured." *Id.* at 343-44. Subsequently, other cases raised the issue of whether the standard was negligence as opposed to bad faith. *See*, *e.g.*, *Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525 (5th Cir. 1962) (noting prior Fifth Circuit cases "go a long way in suggesting that Georgia does not follow the negligence theory" but that a "considerable body of Georgia law found in very pointed expressions in many cases strongly indicates that Georgia may, if it has not already done so, adopt the negligence concept as well"); *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga. App. 581 (1964) (holding bad faith, not merely

AO 72A
(Rev.8/82)

negligence, must be proved if insurer is to be held liable for damages over policy limits for refusing to settle).

The case most often cited for establishing the tort in Georgia is *U.S. Fidelity & Guaranty Co. v. Evans*, 116 Ga. App. 93 (Ga. App.), *aff'd*, 223 Ga. 789 (Ga. 1967). There, the court relied on a law review article by Robert Keeton to set forth the applicable standard, stating:

> The standard suggested by a noted legal scholar is: "With respect to the decision whether to settle or try the case, the insurer, acting through its representatives, must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk – that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results."

*Id.* at 94-95 (citing Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1147 (1954). After considering the insurance company's argument that it could appeal a personal injury verdict against its insured because it was not clear that the driver was guilty of gross negligence and because the injured party had assumed the risk of riding with the driver, the Georgia Court of Appeals then concluded by stating that "[w]e do not think either of these defenses presented this court with any novel point of law in the field of negligence. We agree that it was in the insurer's own self-interest to appeal the case.

However, its duty was not so limited. It had also to give at least equal consideration to the interest of the insured." *Id.* at 97.

In its most recent pronouncement on the tort, the Supreme Court of Georgia stated:

> An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits. Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk. The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy. The insured is interested in protecting itself against an excess judgment; the insurer has less incentive to settle because litigation may result in a verdict below the policy limits or a defense verdict.

> In determining whether the insurer has breached its duty to its insured to settle, a factual issue is sometimes presented concerning whether the insurer had an opportunity to make an effective compromise. In *Southern General Insurance Co. v. Holt*, this Court addressed whether the insured had a bad faith claim against her insurance company for its failure to accept the plaintiff's time-limited settlement offer within the policy limits. We held that the insurer had a duty to its insured to respond to the plaintiff's deadline to settle the personal injury claim within policy limits when the insurer had knowledge of clear liability and special damages exceeding the policy limits. Our holding in *Holt* was consistent with the general rule that the issue of an insurer's bad faith depends on whether the insurance company acted reasonably in responding to a settlement offer.

*Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684-85 (2003).

It is not clear, however, that *Brightman* intended to be a new statement of the law. The case clearly uses the language of negligence in discussing "ordinarily prudent insurer." The case, however, does nothing to disavow or clarify the numerous Georgia cases which

20

have presumably rejected a negligence standard in crafting the "same faithful consideration" or "equal consideration" language.

In fact, *Brightman* re-affirms the Supreme Court's holding in *Southern General Ins. Co. v. Holt*, 262 Ga. 267 (1992), which declined to use any negligence language at all. The only standard discussed by *Holt* is: "In deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured. The jury generally must decide whether the insurer, in view of the existing circumstances, has accorded the insured 'the same faithful consideration it gives its own interest.'" *Holt*, 262 Ga. at 268. The *Holt* court goes on to explain:

> An insurance company does not act in bad faith solely because it fails to accept a settlement offer within the deadline set by the injured person's attorney. *Grumbling v. Medallion Ins. Co.*, 392 F. Supp. 717, 721 (D. Or. 1975). Just like the court in *Grumbling*, we note:
>
>> Nothing in this decision is intended to lay down a rule of law that would mean that a plaintiff's attorney under similar circumstances could 'set up' an insurer for excess judgment merely by offering to settle within the policy limits and by imposing an unreasonably short time within which the offer would remain open.
>
> *Id.* at 721. We reject, however, Southern General's argument that an insurance company has no duty to its insured to respond to a deadline to settle a claim within policy limits when the company has knowledge of clear liability and special damages exceeding the policy limits. Rather, the issue is whether all the facts show sufficient evidence to withstand an insurance company's motion for directed verdict and permit a jury to determine whether the insurer acted unreasonably in declining to accept a time-limited settlement offer.

*Id.* at 276.

Thus, it appears that the unsettled nature of Georgia law in the tort of negligent or bad faith failure to settle persists, despite Judge Tjoflat's efforts at demonstrating the ambiguity in Georgia law in *Delaney*. The court notes, for example, that *Delaney*, while cited numerous times by federal courts, has not been addressed by any Georgia state court. No Georgia Court of Appeals cases since *Brightman* shed any additional light. But it may not necessarily matter. In *Evans*, the court described the difference between bad faith and negligence as "mere terminology" and "means little." 116 Ga. App. 93 (1967). The discussion in *Delaney* agreed. The "difference in the standards of negligence and bad faith may be only semantic." *See Evans*, 156 S.E.2d at 811 (difference between bad faith and negligence is 'mere terminology' and 'means little'); Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1140 (1954) ('The distinction between the 'bad faith rule' and the 'negligence rule' is less marked than these terms would suggest.).'' *Id.* at 1548 n.26.

Finally, relevant to the parties' contentions is *Frickey v. Jones*, 280 Ga. 573 (2006). *Frickey* is an enforcement of settlement agreement case, but it does shed some light on Georgia contract law and whether Bowker's response to Butler's attorney was a counter-offer. There, Frickey caused a motor vehicle accident which seriously injured Jones. Frickey's insurance carrier, State Farm, wrote to Jones' attorney three times requesting

22

medical information so that State Farm could tender its $100,000 limit. Jones' attorney did not respond. State Farm again informed Jones' counsel that it wanted to settle the case. Jones' attorney then sent State Farm a five day time-limit demand letter for the policy limit of $100,000. State Farm responded by stating its willingness to tender the $100,000 limit as full settlement of the claims "upon receipt of the fully executed release enclosed. Obviously, payment is complicated by what appears to be a Grady Hospital lien as well as potential liens by your client's health carrier. Please advise me of the status of these liens." Nothing transpired until Jones' attorney sent State Farm a letter enclosing a copy of the personal injury complaint that had been filed against Frickey. That letter indicated that Jones' attorney was still working on liens and upon resolution of that matter and tender of the $100,000, Jones would dismiss the case.

Three months later, Jones' attorney said the offer to settle was withdrawn because State Farm refused to tender the policy limits without condition. State Farm then tendered the $100,000 to Jones' attorney, but the attorney maintained that the offer to settle had been withdrawn. Frickey then filed a motion to enforce settlement agreement.

The Supreme Court of Georgia found that State Farm's response was not an acceptance, but rather a counter-offer because the response did not accept Jones' offer "unequivocally and without variance of any sort." *Id.* at 574. Instead, it added the condition of resolving the Grady Hospital lien, as well as potential liens by the health carriers. *Id.*

23

"Under the facts of this case, State Farm's response to Jones' offer required an additional

act necessary to acceptance of Jones' offer to settle for the policy limits – the *resolution* of

all actual and potential liens of the health care providers. . . . As such, the [] letter constituted

a counteroffer and no binding agreement was formed." *Id.* at 575-76 (emphasis in original).

The court contrasted this to *Herring v. Dunning*, 213 Ga. App. 695, 698 (1994),

where an injured plaintiff also offered to settle for policy limits and the Defendant accepted

the offer to settle with a full and final release. The acceptance correspondence stated the

"understanding that no liens of any kind exist in this case. Please confirm this at your

earliest convenience." The motion to enforce settlement agreement was granted in *Herring*,

the court noting that the additional language about the release was "precatory" and not

conditional and that the inquiry about the non-existence of any liens was "a mere premise

which invites confirmation." *Id.* at 699.

Here, Defendant first argues that it did respond to Plaintiff's time-limit demand letter

by offering the full $25,000 value of the policy and therefore cannot be liable for tortious

failure to settle. The court, however, holds that *Frickey v. Jones*, 280 Ga. 573 (2006),

conclusively establishes that Bowker's July 5, 2006, letter was a counter-offer to Rogers'

June 27, 2006, offer. Defendant argues that *Frickey* is not a tortious failure to settle case and

is therefore not relevant to the issue in this case. The court disagrees. *Frickey* is a straight

forward breach of contract case which addresses circumstances under which a response

constitutes a counter-offer. *Frickey* is particularly helpful here because it arises in the context of a time-limit demand letter. Defendant's response to Rogers did not simply leave issues open for discussion, as argued by Defendant. It made the offer of $25,000 contingent on conditions not present in Plaintiff's offer and therefore was a counter-offer.

Defendant also asserts that it cannot be held liable because approximately one month after the time-limit demand expired, it unconditionally offered Plaintiff the full limits of the policy – $25,000. As Plaintiff notes, however, in both *Southern General Insurance Co. v. Holt*, 262 Ga. 267 (1992) and *Cotton States Mutual Insurance Co. v. Brightman*, 276 Ga. 683 (2003), the insurer tendered the policy limits after the demand had expired and the Court did not rule that the insurer was insulated from liability because of that late tender.

Defendant next argues that no reasonable jury could conclude that Defendant failed to give equal consideration to its insured in responding to Plaintiff's time limit demand letter. However, Georgia courts generally hold that the reasonableness of an insurer's response in a tortious failure to settle claim is a question for the jury. *See*, *e.g.*, *Holt*, 262 Ga. at 268-69 (jury question exists as to whether insurer acted negligently or in bad faith in rejecting time-limited offer to settle for policy limits); *Great American Insurance Co. v. Exum*, 123 Ga. App. 515, 519 (1971); *U.S. Fidelity & Guaranty Co. v. Evans*, 116 Ga. App. 93 (1967).[2] Both Plaintiff and Defendant have put forward evidence in the record which

---

[2]Of course, where the facts clearly point in one direction, Georgia courts will reach a ruling on motion for summary judgment. *See*, *e.g.*, *Government Employees Insurance Co.*

AO 72A
(Rev.8/82)

could persuade a reasonable jury as to their respective positions. Because the court determines that a jury question exists as to whether under the totality of the circumstances, including both the actions of Plaintiff's counsel, as well as the insurer, Plaintiff can show that Defendant did not act as an ordinarily prudent insurer or put its own interests above those of its insured, the court DENIES Defendant's motion for summary judgment [58].

In his own motion for partial summary judgment, Plaintiff asks the court to determine that Defendant's July 5, 2006, response was a counter-offer. The court has considered that question above in conjunction with Defendant's motion for summary judgment. To the extent the court has made a determination with respect to the counter-offer situation, the court finds it unnecessary at this stage of the litigation to make any further comments as to Defendant's affirmative defenses of waiver, doctrine of release, estoppel, and accord and satisfaction.

Finally, Plaintiff asks the court to rule that there is no evidence of a "set up" with respect to the actions of Plaintiff's counsel. As the court recounted above, Georgia law does apparently recognize the possibility of a "set up." The *Holt* court specifically adopted language from an opinion of the United States District Court for the District of Oregon which cautioned that the rule of law relating to tortious failure to settle claims should not permit a plaintiff's attorney to "set up" an insurer for an excess judgment. *See Holt*, 262 Ga.

---

*v. Gingold*, 249 Ga. 156 (1982); *Nguyen v. Lumbermens Mut. Cas. Ins. Co.*, 261 Ga. App. 553 (2003). The court does not find that to be the case here.

AO 72A
(Rev.8/82)

at 276. It is the court's view that a jury will hear *inter alia* all of the circumstances of the interaction between Plaintiff's counsel and the insurer to determine whether the insurer's actions meet the standard for tortious failure to settle. At this point in the litigation, the court will not rule out a defense based on "set up." For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for partial summary judgment [48].

## III.   Conclusion

The court DENIES AS MOOT Defendant's motion to compel production of video recordings [46]; GRANTS IN PART AND DENIES IN PART Plaintiff's motion for partial summary judgment [48]; DENIES Defendant's motion for summary judgment [58]; GRANTS Defendant's motion to exclude expert testimony of Frank E. Jenkins III [76]; and GRANTS Defendant's motion to exclude expert testimony of James Puckett [77].

AO 72A
(Rev.8/82)

The parties are DIRECTED to file a Pre-Trial Order within thirty (30) days of the date of this order.

**IT IS SO ORDERED** this 17th day of August 2009.


_____/s J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)